UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

MICHAEL ANTWUAN WILLIAMS,

                        Petitioner,

v.

LORETTA K. KELLY,
  Warden, Sussex I State Prison,

                        Respondent.

Civil Action No. 3:10–CV–808

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Michael Antwuan Williams's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus (ECF No. 1) and on the Motion to Dismiss that petition filed by Respondent Loretta K. Kelly, Warden of the Sussex I State Prison (ECF No. 4). The Petitioner alleges that his appellate counsel failed to properly appeal his case from the Court of Appeals of Virginia to the Supreme Court of Virginia. In his petition, he argues that the Supreme Court of Virginia, which denied his state habeas petition, erred in finding that he failed to demonstrate that his counsel's failure to assign error to an appellate decision prejudiced him. As described below, the Court finds that the Petitioner has failed to demonstrate that the Supreme Court's decision was contrary to or an unreasonable application of federal law. For this reason, the Court shall GRANT the Respondent's motion to dismiss, DENY Williams's petition for a writ of habeas corpus, DENY his request for an evidentiary hearing, and ISSUE a certificate of appealability.

//

## I. BACKGROUND

### A. Factual Background

On March 24, 2003, at approximately 1:20 a.m., Deputy Kevin Gary of the Stafford County Sheriff's Department was on routine patrol traveling southbound on Interstate 95 in Stafford County. He began traveling next to a black Ford Excursion and noticed that it had its interior lights illuminated. Deputy Gary observed the passenger, Petitioner Michael Antwuan Williams, hand roll and light what appeared to be a cigarette.[1] Deputy Gary believed that the Petitioner had rolled a marijuana cigarette, rather than a tobacco cigarette, because the cigarette was tapered on both ends.

Deputy Gary initiated a traffic stop using his emergency equipment. Once the driver of the sports utility vehicle (SUV) pulled onto the shoulder of the road and stopped, Deputy Gary exited his patrol vehicle and approached the driver's side of the SUV. All four windows of the vehicle were down, and Deputy Gary smelled marijuana coming from the vehicle and observed smoke exiting the vehicle's windows.

The driver of the vehicle identified herself to Deputy Gary and provided her driver's license. The Petitioner stated he did not have identification available. Deputy Gary asked the Petitioner, whom he believed had engaged in illegal activity, to exit the vehicle. As the Petitioner opened the SUV's door and stepped out, "two little red plastic baggies" containing what appeared to be marijuana fell from his seat to the floor of the SUV. (Suppression Hr'g Tr., Feb. 17, 2004, at 91). Deputy Gary placed the Petitioner under arrest.

---

[1] At the suppression hearing, Deputy Gary testified that the male passenger "had one hand slightly cupped. There was something in his hand, and he was . . . pouring something out of a bag into it, into his cupped hand. He then proceeded to roll the end of the cigarette and light it." (Suppression Hr'g Tr., Feb. 17, 2004, at 82).

In a search of the Petitioner's person conducted incident to that arrest, Deputy Gary found cash and illegal substances. He also found more illegal substances, a large amount of cash, and a firearm upon searching the vehicle. Deputy Gary later learned that the SUV was rented but not to the driver or the Petitioner.

B. **Procedural History**

    1. **Circuit Court of Stafford County**

In November 2003, a Stafford County grand jury indicted the Petitioner on numerous charges related to the March 2003 traffic stop. On February 17, 2004, the trial court held a hearing on a motion to suppress filed by the Petitioner, who argued that Deputy Gary did not have a reasonable articulable suspicion to effect the traffic stop. At the conclusion of that hearing, the trial court held that the Petitioner did not have standing to challenge the stop because he was a passenger and non-authorized user in a rental vehicle. The trial court held, in the alternative, that Deputy Gary had a reasonable articulable suspicion that warranted the traffic stop.[2]

On July 8, 2004, a jury found the Petitioner guilty of transporting cocaine and heroin into the Commonwealth and of possessing a firearm while in possession of drugs. On September 16, 2004, the trial court sentenced the Petitioner to fifty-five years incarceration.

    2. **Court of Appeals of Virginia**

---

[2]  The court credited Deputy Gary's testimony and stated the following regarding his reasonable articulable suspicion: "[T]he Court is making this ruling considering the experience and the training of the officer. While it's not the most experience or the most training this Court or defense counsel or the prosecutor has ever encountered in a case, he did have adequate training and experience to guide him in making the suspicions that he's testified to that he made." (Suppression Hr'g Tr., Feb. 17, 2004, at 198).

The Petitioner filed a timely notice of appeal of his conviction and sentencing. In his petition for appeal, the Petitioner presented four questions, including one relevant to his federal habeas petition: "[w]hether the trial court erred by failing to find that the law enforcement officer did not have the requisite probable cause or reasonable suspicion of criminal activity prior to seizing the defendant for extended time period." (Pet., Mar. 7, 2005, at 2). After reviewing the petition, the Court of Appeals awarded Williams an appeal on this question, which the court restated as "[w]hether appellant, the passenger in a rental car, had standing to object to the stop of the vehicle." (Order, Aug. 8, 2005, at 1). The court denied the remainder of the petition for appeal.

On June 20, 2006, the Court of Appeals found that the Petitioner lacked the requisite standing necessary to challenge the traffic stop—that is, that as a passenger in the rented vehicle, he had no reasonable expectation of privacy. In a dissent, Judge Benton asserted that the court should have considered the substantive issue presented on appeal: whether Deputy Gary had a reasonable articulable suspicion to seize the Petitioner. Judge Benton stated, "Judged on an objective standard, the facts and circumstances indicate the deputy sheriff saw nothing more than conduct that was indicative of a person rolling and lighting a cigarette." (Mem. Op., June 20, 2006, at 15) (Benton, J., dissenting). Because Deputy Gary's "hunch" did not rise to the level of a reasonable articulable suspicion, the stop and seizure were both unlawful, according to Judge Benton.

3. **Supreme Court of Virginia**

On July 13, 2006, the Petitioner noted an appeal, which the Supreme Court of Virginia dismissed due to counsel's failure to timely file it. On November 2, 2006, the Supreme Court granted the Petitioner a delayed appeal; however, the court dismissed this

4

appeal due to counsel's failure to assign error as required by Rule 5:17(a)(2) of the Rules of the Supreme Court of Virginia. On June 18, 2007, the court granted the Petitioner's second request to file a delayed appeal and "authorized [the Petitioner] to file . . . a petition for appeal with the Supreme Court of Virginia from the judgment rendered against him by the Court of Appeals on June 20, 2006."

On July 17, 2007, the Petitioner filed his petition for appeal in the Supreme Court. In it, he listed four assignments of error, two of which are relevant here:

> I. The trial court committed reversible error by holding that Appellant, a passenger in a rental vehicle, had no standing to challenge the traffic stop of said vehicle. . . .
>
> II. The trial court erred by failing to find that the law enforcement officer did not have the requisite probable cause or reasonable suspicion of criminal activity prior to seizing the Defendant for extended time period. . . .

(Pet., July 17, 2007, at 2). After briefing from both parties, the Supreme Court awarded the Petitioner an appeal on the first two assignments of error.

In their appellate briefs, the parties conceded that the Defendant had standing to challenge the stop, based on *Brendlin v. California*, a June 2007 decision by the Supreme Court of the United States. *See* 551 U.S. 249, 251 (2007) (holding that a vehicle passenger has standing to challenge the constitutionality of a traffic stop). Nonetheless, the Supreme Court of Virginia dismissed the Petitioner's appeal as "improvidently awarded." (Order, Mar. 14, 2008, at 1). According to the court, the Petitioner failed to assign error to the appellate court's decision not to consider the validity of the stop. Thus, even though the Commonwealth conceded on the first assignment of error (i.e., the trial court's decision on the standing issue), "the trial court's alternative holding that the stop was valid is an independent basis for the trial court's judgment that has not been challenged on appeal."

5

(Order, Mar. 14, 2008, at 2 (citing *United Leasing Corp. v. Thrift Ins. Corp*, 440 S.E.2d 902, 907 (Va. 1994)). Thus, the Supreme Court held that it should not have awarded the Petitioner an appeal.

### 4. Habeas Petitions

Williams filed a petition for a writ of habeas corpus in the Supreme Court of Virginia on March 13, 2009, alleging that his appellate counsel's failure to properly appeal the Court of Appeals decision deprived him of his Sixth Amendment right to effective assistance of counsel. After briefing and oral argument, the court held that the Petitioner was not entitled to habeas relief because he failed to demonstrate prejudice under *Strickland v. Washington*, 466 U.S. 668 (1984).

Williams timely filed the instant petition on November 2, 2010, alleging again that his appellate counsel's failure to preserve the validity issue for appeal deprived him of his right to effective assistance of counsel. Both the state and federal habeas petitions included an affidavit from Williams's appellate counsel, who stated that he "failed to properly note Mr. William[s]'s appeal on the issue of whether or not there existed probable cause to effect the stop of the vehicle in which he was a passenger." (Jackson Aff., ECF No. 2-1, at 1). Loretta K. Kelly, Warden of the Sussex I State Prison, by counsel, filed an answer and motion to dismiss the petition.

## II. APPLICABLE LAW

### A. Standard of Review

A federal court may review a petition for a writ of habeas corpus by a person serving a sentencing imposed by a state court only on the ground that the person is being

6

held in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The federal court may grant the petition on a claim decided on its merits by the state court only if that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," *id.* § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d)(2).

A decision is "contrary to" federal law if it resolves a question of law in a way that contradicts the relevant Supreme Court precedent, or if it yields a result that differs from the outcome of a Supreme Court case involving "materially indistinguishable" facts. *Williams v. Taylor*, 529 U.S. 362, 405-06, 413 (2000). A decision applies federal law unreasonably if it is based on the correct legal principle but applies that rule unreasonably to the facts of a case. *Id.* at 413. Whether a decision is reasonable is determined by an objective, not subjective, test. *Id.* at 409-10. The question is not "whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 473, 1939 (2007) (citing *Williams*, 529 U.S. at 410). Finally, a federal court is to presume the correctness of the state court's finding of facts and not find an "unreasonable determination" of the facts, unless the petitioner rebuts the presumption that the state court's findings were incorrect by clear and convincing evidence. *Id.*

Thus, under § 2254(d), if a state court applies the correct legal rule to the facts of a case in a reasonable way, or makes factual findings reasonably based on the evidence presented, a federal court does not have the power to grant a writ of habeas corpus, even if the federal court would have applied the rule differently. *Williams*, 529 U.S. at 406-08.

**B. <u>Ineffective Assistance of Counsel</u>**

The Sixth Amendment establishes that a person charged with a crime is entitled to effective representation, *Strickland*, 466 U.S. at 685-86, at every "critical stage" of the proceedings against him. *Kirby v. Illinois*, 406 U.S. 682, 690 (1972). In considering a defendant's claim that his Sixth Amendment rights were violated due to ineffective assistance of counsel, "[a] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *see United States v. Dyess*, 478 F.3d 224, 238 (4th Cir. 2007) (stating that attorneys are presumed to have "rendered objectively effective performance").

A petitioner who alleges ineffective assistance of counsel as grounds for his § 2254 petition must prove that (1) his counsel's performance was deficient and (2) his counsel's deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687. To satisfy the first prong of the test, the petitioner "'must show that counsel's representation fell below an objective standard of reasonableness' measured by 'prevailing professional norms.'" *Lewis v. Wheeler*, 609 F.3d 291, 301 (4th Cir. 2010) (quoting *Strickland*, 466 U.S. at 688). To satisfy the prejudice requirement, the petitioner must show that counsel's errors were serious enough to deprive the petitioner of a fair trial. *Strickland*, 466 U.S. at 687. In other words, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of that proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. A court may inquire into either prong of the *Strickland* test first. If it is clear that a defendant has not satisfied one prong, a court need not inquire into whether he has satisfied the other. *Id.* at 697.

## C. <u>Unreasonable Seizure</u>

The Fourth Amendment ensures that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. Therefore, "[e]vidence gathered as fruit of an unreasonable search or seizure is generally inadmissible against a defendant," except for the purpose of impeachment. *United States v. Brown*, 401 F.3d 588, 592 (4th Cir. 2005) (citing *Taylor v. Alabama*, 457 U.S. 687, 694 (1982); *Wong Sun v. United States*, 371 U.S. 471, 484-86 (1963); *Walder v. United States*, 347 U.S. 62, 64-65 (1954) (holding illegally obtained evidence admissible for purposes of impeachment)). "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980).

"Because an automobile stop is a seizure of a person, the stop must comply with the Fourth Amendment's requirement that it not be unreasonable under the circumstances. As a result, such a stop must be justified by probable cause or a reasonable suspicion, based on specific and articulable facts, of unlawful conduct." *United States v. Wilson*, 205 F.3d 720, 722-23 (4th Cir. 2000) (*citing Whren v. United States*, 517 U.S. 806, 809-10 (1996); *United States v. Hassan El*, 5 F.3d 726, 729 (4th Cir.1993)) (internal citations and quotation marks omitted). A police officer may conduct an investigatory detention or seizure, commonly referred to as a *Terry* stop, without violating the Fourth Amendment when the officer possesses "a reasonable and articulable suspicion" that criminal activity is afoot. *United States v. Smith*, 396 F.3d 579, 583 (4th Cir. 2005); *see Terry v. Ohio,* 392 U.S. 1, 30 (1968); *United States v. Reaves*, 512 F.3d 123, 126 (4th Cir. 2008).

Whether the facts give rise to a reasonable and articulable suspicion must be judged objectively—that is, whether a "man of reasonable caution" in the shoes of the police officer, given the facts, would believe the investigatory detention was appropriate. *Terry*, 392 U.S. at 20. Although reasonable suspicion is a less demanding standard than probable cause, "[t]he officer . . . must be able to articulate something more than an inchoate and unparticularized suspicion or hunch." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (internal quotations omitted). To determine whether an officer had a reasonable suspicion of criminal activity, courts assess the totality of the circumstances surrounding the seizure. *Id.* at 8. There are numerous relevant facts that may be considered, including the experience of the officer. *See United States v. Lender*, 985 F.2d 151, 154 (4th Cir. 1993) (internal citation omitted) (noting that the "practical experience of the officers" is a factor that may raise the level of suspicion).

### III. <u>DISCUSSION</u>

#### A. <u>Ineffective Assistance of Counsel</u>

The Supreme Court of Virginia found that the Petitioner could not demonstrate that his appellate counsel's failure to preserve the validity issue amounted to ineffective assistance of counsel because he could not show *Strickland* prejudice. Upon review of the record and the parties' briefs, this Court concludes that the Supreme Court of Virginia applied the correct legal rule to the facts of this case in a reasonable manner.

The Supreme Court focused on the prejudice prong of *Strickland* to deny Williams's habeas petition. A review of the record, including the transcript of the February 2004 suppression hearing, supports the Supreme Court's determination that Deputy Gary had a

10

reasonable and articulable suspicion to stop the vehicle. The totality of the circumstances included Deputy Gary's observation of the passenger of the vehicle hand-rolling and lighting a cigarette that was tapered on both ends. In Deputy Gary's professional experience, rolled cigarettes with both ends tapered are marijuana cigarettes. Deputy Gary's personal experience with hand-rolled tobacco cigarettes was that they are not tapered on both ends. Thus, he believed that the Petitioner's cigarette was not a tobacco cigarette because both ends were tapered. The totality of the circumstances provided ample suspicion for a "man of reasonable caution" with Deputy Gary's practical experience to conclude that the Petitioner rolled and lit a marijuana cigarette.

In an attempt to demonstrate prejudice from his appellate counsel's failure to preserve the validity issue, the Petitioner relies primarily on Judge Benton's dissent, which asserted that Deputy Gary's "hunch" did not constitute reasonable articulable suspicion. The primary difference between the Supreme Court of Virginia's analysis and Judge Benton's dissent is that the latter categorizes Deputy Gary's belief that the Petitioner was rolling a marijuana cigarette as a "hunch" while the former found it supported by reasonable articulable suspicion. Under the applicable standard of review and as discussed above, this Court finds that the Supreme Court's holding was not an unreasonable application of the law. The Petitioner also relies on *Brown v. Commonwealth*, 620 S.E.2d 760 (Va. 2005), for the proposition that "police do not have probable cause to arrest an individual based upon the officer's observation of a hand rolled cigarette possessed by the defendant." (Reply, ECF No. 9, at 8). *Brown* does not advance the Petitioner's argument, however, because it addresses the probable cause for *arrest*, not for a traffic stop. The standard for the latter is less demanding.

The Supreme Court of Virginia applied the appropriate federal law in a reasonable manner to conclude that the Petitioner failed to meet the prejudice prong of *Strickland*. Accordingly, the Court denies his petition for federal habeas relief.

**B. <u>Evidentiary Hearing</u>**

The decision to grant an evidentiary hearing is left to the "sound discretion of district courts." *Schriro*, 550 U.S. at 473; *see* 28 U.S.C. § 2254, Rule 8(a) ("[T]he judge must review the answer [and] any transcripts and records of state-court proceedings . . . to determine whether an evidentiary hearing is warranted."). A federal court must consider whether the evidentiary hearing would provide the petitioner the opportunity to "prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro*, 550 U.S. at 474; *see Mayes v. Gibson*, 210 F.3d 1284, 1287 (10th Cir. 2000). The court must also consider the standards prescribed by § 2254 when considering whether an evidentiary hearing is appropriate. *Schriro*, 550 U.S. at 474.

The Petitioner requests an evidentiary hearing so that "all matters relevant and necessary may be evaluated." (Mem., ECF No. 2, at 9). There are no factual disputes at issue here that merit an evidentiary hearing. Williams's appellate counsel admits that he failed to preserve the validity issue for appeal, and Williams does not assign error to the Supreme Court's factual determinations, only its legal conclusions. Because Williams has failed to demonstrate that his counsel was ineffective based on the undisputed facts, he cannot factually prove he is entitled to relief. Accordingly, an evidentiary hearing is unnecessary, and the Court denies that request.

**C. <u>Certificate of Appealability</u>**

Rule 11(a) of the Rules Governing Section 2254 Proceedings for the United States District Courts requires a district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." For Williams to appeal this Court's denial of his habeas petition, the petition must meet the showing required by 28 U.S.C. § 2253(c)(2), which allows an appeal in a § 2254 case "only if the applicant has made a substantial showing of the denial of a constitutional right." Specifically, the applicant must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Rose v. Lee*, 252 F.3d 676, 683-84 (4th Cir. 2001). The Supreme Court has held that "a claim can be debatable even though every jurist of reason might agree . . . that petitioner will not prevail." *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003). In recognition of this permissive standard, the Court will issue a Certificate of Appealability although the record in this case shows that Williams has failed to meet the prejudice prong of the *Strickland* inquiry.

//
//
//
//
//
//
//
//
//
//

## IV. **CONCLUSION**

For the foregoing reasons, the Court GRANTS the Respondent's motion to dismiss, DENIES the petition for habeas relief, DENIES the Petitioner's request for an evidentiary hearing, and ISSUES a Certificate of Appealability.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate order shall issue.

> _____/s/_____
> James R. Spencer
> Chief United States District Judge

ENTERED this __30th_ day of August 2011.